454 A.2d 1008

**In re Commitment of Donna HUTCHINSON.**

**Appeal of the SCHUYLKILL COUNTY MENTAL HEALTH AND MENTAL RETARDATION PROGRAM.**

Supreme Court of Pennsylvania.

Argued Dec. 8, 1982.

Decided Dec. 31, 1982.

Alvin E. Maurer, Jr., Pottsville, for appellant.

Robert J. Manara, Norristown, for appellee.

Howard Ulan, Asst. Atty. Gen., James G. Morgan, Jr., Harrisburg, amicus curiae for Mental Health and Mental Retardation Ass'n.

Before O'BRIEN, C.J., and ROBERTS, NIX, LARSEN, FLAHERTY and McDERMOTT, JJ.

## OPINION

McDERMOTT, Justice.

This is an appeal by appellant, Schuylkill County Mental Health and Mental Retardation Program, from a Superior Court order reversing the decision of the Schuylkill County Court of Common Pleas, by which appellee, Donna Hutchinson, was involuntarily committed to Wernersville State Hospital for a period of ninety days for psychiatric treatment under Section 304 of the Mental Health Procedures Act (hereinafter "MHPA").[1]

The facts revealed by the record are as follows. Appellee's grandmother petitioned under Section 304 of the MHPA for an emergency examination of appellee on May 19, 1979, claiming that appellee had physically abused and threatened her. On May 21, 1979, an examining physician petitioned the court to commit appellee involuntarily for a period not to exceed ninety days pursuant to the MHPA.[2]

---

[1]. Act of July 9, 1976, P.L. 817, No. 143, § 304, 50 P.S. § 7304.

[2]. A court may order involuntary treatment under 50 P.S. § 7304, if it determines that a person is severely mentally disabled and in need of

The following day a hearing was conducted, at which the examining psychiatrist and appellee appeared as witnesses.

At the hearing, the psychiatrist testified that the May 19, 1979, emergency commitment forms indicated that within the last thirty days appellee had struck her grandmother and that she had possessed a gun with which she had threatened to kill someone. Although the police had taken the gun from her, appellee had continued her threats, according to the psychiatrist.

The psychiatrist further testified as to appellee's prior history of psychiatric treatment and his personal examination of her during the emergency commitment. He concluded that appellee was suffering from a severe mental disability and without treatment she was a serious threat to the people of the community. In addition to relying on the commitment forms in his testimony the psychiatrist testified to the content of conversations he had had with appellee's grandmother and with several of appellee's other relatives. Appellee's counsel made no objection to these obvious hearsay statements.

Appellee took the stand and denied threatening or striking her grandmother and possessing a gun during the thirty-day period prior the proceedings below. She testified that her relatives were hostile toward her and admitted that she was not taking the medication prescribed by her physician. At the close of the hearing, the trial court ordered appellees to receive in-patient treatment at the state hospital for a period not to exceed ninety days.

Appellee obtained the services of different counsel and appealed to the Superior Court, which reversed the lower court's order, holding that appellee had not received effective assistance of counsel. *In re Commitment of Donna*

treatment. An individual is considered severely mentally disabled when he or she poses a clear and present danger of harm to others or to himself or herself. 50 P.S. 7301(a). To establish dangerousness to others, it must be shown that within the past thirty days the person has inflicted or attempted to inflict serious bodily harm on another and that there is reason to believe that such conduct will be repeated. 50 P.S. § 7301(b)(1).

156

*Hutchinson,* 279 Pa.Super. 401, 421 A.2d 261 (1980). We granted allocatur and now affirm.[3]

■ The instant case again requires us to consider the MHPA, which, we have observed, is "an enlightened legislative endeavor to strike a balance between the state's valid interest in imposing and providing mental health treatment and the individual patient's rights." *In re Gross,* 476 Pa. 203, 212, 382 A.2d 116, 121 (1978). It is well-settled that involuntary civil commitment of mentally ill persons constitutes deprivation of liberty and may be accomplished only in accordance with due process protections. *Appeal of Niccoli,* 472 Pa. 389, 395 n. 4, 372 A.2d 749, 752 n. 4 (1977); *Commonwealth v. McQuaid,* 464 Pa. 499, 517, 347 A.2d 465, 475 (1975); *Commonwealth ex rel. Finken v. Roop,* 234 Pa.Super. 155, 163, 339 A.2d 764, 768 (1975), *appeal dismissed,* 424 U.S. 960, 96 S.Ct. 1452, 47 L.Ed.2d 728 (1976). *See also, Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). As the General Assembly stated in enacting the MHPA:

> It is the policy of the Commonwealth of Pennsylvania to seek to assure the availability of adequate treatment to persons who are mentally ill, and it is the purpose of this act to establish procedures whereby this policy can be effected. *The provisions of this act shall be interpreted in conformity with the principles of due process to make voluntary and involuntary treatment available where the need is great and its absence could result in serious harm to the mentally ill person or to others.*

50 P.S. § 7102 (emphasis supplied).

We are now called upon to decide whether the vindication of the due process rights of an alleged mental incompetent require that such a person receive effective representation of counsel at civil commitment proceedings. Resolution of this question requires us to balance the competing interests

3. Jurisdiction is vested in this Court pursuant to the Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S.A. 724.

of the Commonwealth and of the individual in the civil commitment context.[4]

The Commonwealth has dual interests in civil commitment proceedings. First, the state must assure availability of adequate treatment to those persons who are mentally ill, but who, for whatever reasons, decline treatment. *See* 50 P.S. § 7102. The Commonwealth's right to impinge upon the freedom of a mentally ill person for his or her own benefit is based on the doctrine of *parens patriae,* i.e., that the state has a solemn duty to safeguard the welfare of the individual. Secondly, the Commonwealth is obliged to protect the welfare of others from the mentally ill person. The authority to confine dangerous persons arises from the state's inherent police powers. *See generally, Developments—Civil Commitment of the Mentally Ill,* 87 Harv.L. Rev. 1190 (1974).

The individual interests in such proceedings are self-evident: to obtain treatment where necessary, but always to preserve individual liberty. To protect these interests the legislature has provided that an alleged mental incompetent is entitled to representation by private or court-appointed counsel. 50 P.S. §§ 7304(c)(3), 7304(e)(1).

For the legislatively-created right to representation to have meaning, counsel must be effective. Indeed, without the guiding hand of competent counsel, appellee's right to representation would be rendered worthless. Moreover, appellee would be unable to enjoy the other protections guaranteed by Section 304 of the MHPA, such as the right to confront and cross-examine witnesses and the right to a public hearing on the record.[5]

4. The Legislature has mandated extensive procedural protections for the individual in civil commitment proceedings. *See generally,* 50 P.S. 7304.

5. As the Superior Court noted, other jurisdictions have insisted that counsel at a civil commitment hearing must be effective. *E.g., Lynch v. Baxley,* 386 F.Supp. 378 (M.D.Ala.1974): *Suzuki v. Quisenberry,* 411 F.Supp. 1113 (D.Hawaii 1976); *State ex rel. Hawks v. Lazaro,* 157 W.Va. 417, 202 S.E.2d 109 (1974); *State ex rel. Memmel v. Mundy,* 75 Wis.2d 276, 249 N.W.2d 573 (1977).

■ We therefore hold that an alleged mental incompetent is entitled to effective representation by competent counsel, and that such a person may raise allegations of ineffective assistance of counsel in attacking a commitment order. Upon review of a challenge to counsel's effectiveness, the courts must examine the record of the proceedings to ascertain whether counsel's actions had a reasonable basis designed to effectuate his client's interests. *See Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 604–05, 235 A.2d 349, 352–53 (1967). Where no such basis appears in the record, counsel shall be deemed ineffective, and a new hearing, at which the alleged mental incompetent may be represented by competent counsel, must be held.[6]

■ Applying this standard to the instant case, we agree with the Superior Court that appellee's counsel was ineffective. Appellee's counsel failed to object when the Commonwealth's only witness, the examining psychiatrist, testified that the commitment forms and a telephone conversation with appellee's grandmother revealed that appellee had assaulted her grandmother and had possessed a gun which was taken from her by the police. This testimony was clearly hearsay because it represented out of court statements made by appellee's grandmother, which were offered to prove that appellee did indeed commit the alleged assault. Neither the police nor the grandmother were called as witnesses. Without doubt, this evidence was crucial in establishing whether appellant presented a clear and present danger to others under Section 301(b)(1) of MHPA.[7] Under these circumstances, appellee's counsel at the commitment hearing could have had no reasonable basis for failing to object to this evidence. *See Commonwealth v. Witherspoon,* 481 Pa. 321,

**6.** We are constrained to note that, while the standard we announce today for effective assistance in commitment proceedings is the same as that for criminal proceedings, the rights to effective assistance are not precisely co-extensive in the criminal and civil commitment realms. The right to effective assistance in commitment proceedings must be viewed in the civil commitment context in light of the purposes of the MHPA as set forth in Section 102, 50 P.S. § 7102.

**7.** 50 P.S. § 7301.

392 A.2d 1313 (1978). Because counsel was ineffective, a new hearing is required.[8]

Accordingly, the order of the Superior Court is affirmed.

NIX, J., files a dissenting opinion.

HUTCHINSON, J., did not participate in the consideration or decision of this case.

NIX, Justice, dissenting.

I am in agreement that the right of counsel, conferred under the Mental Health Procedures Act,[1] carries with it the concomitant requirement that counsel's performance must be effective on behalf of the client. However, in view of the nature of the inquiry, it must be remembered that the best interest of the client in these cases is not necessarily served by striving to seek the client's release. The mere fact that counsel failed to object to the hearsay evidence in this case without a further explanation as to why counsel elected to follow that course of action does not provide a justification for a finding of ineffectiveness.

---

**8.** We find without merit appellant's claim that hearsay evidence is admissible in *all proceedings* under MHPA on the theory that hearsay is admissible at the informal hearing required for an application for extended emergency treatment not to exceed 20 days. 50 P.S. § 7303(c). Appellee was committed for a period not to exceed 90 days pursuant to § 304, which requires a formal hearing to be held in accordance with due process standards. 50 P.S. § 7304. The legislature has determined that commitments for less than twenty days do not require the same formalities as are necessary in commitments for longer periods of time. This case does not require us to decide the propriety of the relaxed standards under § 303.

Furthermore, appellant's right to confront and cross-examine witnesses necessarily implies that hearsay evidence is inadmissible. 50 P.S. § 7304(e)(3). Finally, considering the grave consequences of an adjudication of mental illness under § 304, it is imperative that the commitment court strictly comply with the rules of evidence generally applicable to other proceedings which may result in an extended deprivation of an individual's liberty. The Commonwealth's burden to present admissible evidence at the commitment hearings is small compared to the individual's interest in not being deprived of liberty on the basis of inherently unreliable evidence. *See Commonwealth ex rel. Finken v. Roop,* 234 Pa.Super. at 173–74, 339 A.2d at 773–74.

**1.** Act of July 9, 1976, P.L. 817, No. 143, § 304, 50 P.S. § 7304.

160

For example, counsel from his own investigation may well have been aware of the existence of the facts supportive of the conclusion that his client was a danger to herself and others. If such was the case, I do not believe that the attorney was under a duty to take advantage of some fortuitous difficulty with which the government may have been faced in presenting legally admissible evidence of these facts.

Accordingly, I would have directed at the very least that a hearing be held to ascertain counsel's explanation for his decision.