576 A.2d 53

**James A. DUTTRY, Appellant,**

v.

**Lisa TALKISH, Appellee.**

Superior Court of Pennsylvania.

Submitted Feb. 12, 1990.

Filed May 31, 1990.

James A. Duttry, pro se.

Lisa Talkish, pro se.

Before WIEAND, POPOVICH and MONTGOMERY, JJ.

POPOVICH, Judge:

This case involves an appeal from the May 17, 1989, order of the Court of Common Pleas of Erie Count denying a motion for the appointment of counsel by the appellant, James A. Duttry.[1]  We quash.

The record reflects the occurrence of the following events:  On April 13, 1989, the appellant, an inmate in the State Correctional Institution at Pittsburgh,[2] obtained an order of court permitting him to file a complaint seeking partial custody and visitation rights to his minor child (Erika).  The sheriff made service of the complaint on April 17, 1989, and therein the appellant alleged that he was the natural father of the then 12–year–old child born out of wedlock to one Lisa Talkish.  The child and Ms. Talkish reside with her present husband, Ernest Talkish.[3]

In seeking partial custody and visitation rights, the appellant averred in his complaint that the best interest and permanent welfare of the child would be served by granting him the relief requested.  In particular, the appellant asserted:

a) The plaintiff is the child's natural father, and has an unqualified right of family autonomy.

1.  From the record, it appears that all of the appellant's petitions, motions and briefs have been filed *pro se,* save for a petition for review in the nature of mandamus submitted by one "BARS INCORPORATED MEMBER WCM—Inmate Legal Assistance".

2.  The appellant does not indicate in his brief to us what charge(s) he was convicted of committing.  However, he does disclose that "since his imprisonment in 1978, the Appellant maintained communications and received visits from his daughter ... until the mother[, during the past three to four years,] gradually terminated those parental rights of the Appellant....."

3.  In the complaint, the appellant avers that "[h]e is possibly still married to the mother of the child due to certain laws under the Pennsylvania Mental Health Procedure Act.  Specifically: 50 P.S. § 3511."  Paragraph 3.  We need not pass on the validity of this assertion to resolve the case at hand.

b) The child Erika Duttry had visited her father, in prison, until four years ago.

c) The father and child maintained a relationship through letters, phone calls, and visits until the mother made it impossible.

d) The child should be permitted to maintain a relationship with her father [so] that the child has a proper psychological development.

e) The plaintiff has received certain and specific informations [sic] concerning excessive illegal school absences and of school absences which are deemed not to be normal; and

f) The plaintiff has received certain and specific information concerning excessive alcohol drinking before the cild [sic] and in the household of the child.

g) The father desires to fulfill his parental responsibilities and continue to be a significant person in his daughter's life.

h) The father also desires to protect his parental rights and his daughter's rights by utilizing all available means to maintain a contact with his child.

Paragraph 9, subparagraphs (a)-(h).

To resolve the claims of the appellant, the court ordered a hearing for 10:30 a.m. on the 12th of June, 1989, at the Custody Office of the Court House. On May 15, 1989, the appellant submitted a motion for the appointment of counsel since his indigency precluded him from securing private counsel to "prepare ... or to conduct legal arguments in open court in which to ... protect his parental rights and [the] right of the child." [4] Paragraph 2. The appellant's

4. It is interesting to note that, according to the appellant's brief, the appellant had representation in his effort to secure partial custody and visitation rights on a prior occasion; to-wit:

Over the passing years since his imprisonment in 1978, the Appellant maintained communications and received visits from his daughter Erika, until the past three to four years that her mother, Lisa Talkish, gradually terminated those parental rights of the Appellant.....

Pursuant to the aforesaid events, and the Appellant having great concern for the well being of his daughter Erika, he on or about

request for the appointment of counsel was denied by the court below, which believed that to do so would have opened the flood-gates to every indigent's request for counsel in all cases, a situation thought by the court to be an "unduly burdensome" expense to the public. Also, the court below held that such a right and duty have not been extended to the field of civil law from the criminal arena. This appeal followed, and the appellant, acting *pro se*, was granted the right to proceed *in forma pauperis*.

Intertwined with the appellant's request that we review the denial of his motion for the appointment of counsel to aid him in his efforts to obtain partial custody/visitation rights of his minor child is the appealability of the order in question.

In this Commonwealth, the jurisdiction of the appellate courts is fixed by statute. As is applicable instantly, 42 Pa.C.S. § 742 provides in relevant part that:

> December, 1986, wrote letters to the Neighborhood Legal Services in Pittsburgh in request for aid in matter of his daughter Erika, which thereby resulted in the Erie County Bar Association requesting the law firm of "Taggart & McBride", Attorneys at Law, to represent the Appellant in [the] matter of the child Erika. The law firm of Taggart & McBride thereafter filed on behalf of the Appellant a "Complaint for Partial Custody and Visitation" rights in [the] matter of child Erika, which legal action thereto was assigned Erie County Court of Common Pleas Civil Division No. 2706–A–1987. After some several proceedings being there had in case matter, [sic] Court Order issued directing that on August 24, 1987, at 9 o'clock a.m. in the Office of of [sic] the Custody Counselor of Erie County, that a hearing was to be there held in matter of Partial Custody and Visitation rights in the matter of child Erika. The Appellant not being taken to the hearing in the matter of his child Erika, in protest thereto, climbed on top of a building in the prison, and which actions by the Appellant subsequently resulted in his transfer to "Fairview State Hospital" by prison officials. (Apparently "the actual hearing never took place", as conveyed to the Appellant by the law firm Taggart & McBride, via Carol Morehouse, SSJ; and on April 5, 1988, the Appellant received further legal communication from Carol Morehouse, SSJ, that: "I believe the court would be very concerned over your mental stability and that the recent events surrounding the custody hearing we had scheduled would, in fact, increase that concern. Therefore, it is my opinion that there is no point in attempting to pursue your right to visitation any further, at this time.")

(Appellant's Brief at 2–3)

The Superior Court shall have exclusive appellate jurisdiction of all appeals from final orders of the courts of common pleas, regardless of the nature of the controversy or the amount involved....

The finality of an order under Section 742 has been interpreted to mean, although not literally, *Foulke v. Lavelle,* 308 Pa.Super. 131, 135–136, 454 A.2d 56, 58 (1982), that the order either ends the litigation or disposes of the entire case. *Gerber v. Weinstock,* 308 Pa.Super. 11, 13–14, 453 A.2d 1043, 1044 (1982). Phrased differently, we look to "a practical rather than a technical construction" of an order. On this subject, in *Pugar v. Greco,* 483 Pa. 68, 394 A.2d 542 (1978), our Supreme Court, quoting *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), wrote:

In *Cohen,* the Supreme Court of the United States carved out an exception to the final judgment rule for situations where postponement of appeal until after final judgment might result in irreparable loss of the right asserted. Under *Cohen,* an order is considered final and appealable if (1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost. *Id.* at 546, 69 S.Ct. at 1226, 93 L.Ed. at 1536.

We applied *Cohen* in *Bell v. Beneficial Consumer Discount Company,* 465 Pa. 225, 228, 348 A.2d 734, 735 (1975), where we said: "Whether an order is final and appealable cannot necessarily be ascertained from the face of a decree alone, nor simply from the technical effect of the adjudication. The finality of an order is a judicial conclusion which can be reached only after an examination of its ramifications." We have also said that if the practical consequence of the order by the trial court is effectively to put an appellant "out of court" the order will be treated as final. *Ventura v. Skylark Motel, Inc.,* 431 Pa. 459, 463, 246 [A.2d] 353, 355 (1968). Similarly, an

order is "final" if it precludes a party from presenting the merits of his claim to the lower court. *Marino Estate*, 440 Pa. 492, 494, 269 A.2d 645, 646 (1970).

483 Pa. at 73, 394 A.2d at 545.

The "collateral order" exception to the final judgment rule enunciated in *Cohen* was clarified in *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978), to require that to fit the exception, " 'the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment.' " *Lariscey v. United States,* 861 F.2d 1267, 1269 (Fed.Cir.1988), quoting *Coopers & Lybrand,* supra, 437 U.S. at 468, 98 S.Ct. at 2457.

Of interest to this Court is that in *Richardson–Merrell, Inc. v. Koller,* 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985), the Supreme Court held that orders disqualifying counsel in civil cases are not collateral orders subject to immediate appeal. In doing so, the Court remarked:

> We acknowledge that an order disqualifying counsel may impose significant hardship on litigants. Particularly where the grounds for disqualification are troubling, this hardship may tempt courts of appeals to assert jurisdiction pursuant to § 1291. But in the words of Judge Adams:
>
>> "[I]t would seem to us to be a disservice to the Court, to litigants in general and to the idea of speedy justice if we were to succumb to enticing suggestions to abandon the deeply-held distaste for piecemeal litigation in every instance of temptation. Moreover, to find appealability in those close cases where the merits of the dispute may attract the deep interest of the court would lead, eventually, to a lack of principled adjudication or perhaps the ultimate devitalization of the finality rule as enacted by Congress." *Bachowski v. Usery,* 545 F.2d 363, 373–374 (CA3 1976).

472 U.S. at 440, 105 S.Ct. at 2766. Accord *Flanagan v. United States,* 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288

(1984); *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981).

Instantly, "it is quite clear to us that an order disqualifying a party's choice of counsel is not easily distinguishable from an order denying counsel." See *Smith–Bey v. Petsock,* 741 F.2d 22, 25 (3rd Cir.1984). As such, given the credence by our Supreme Court in *Pugar v. Greco,* supra, to the *Cohen* criteria, we see no reason not to adhere to the test discussed in *Cohen, Coopers & Lybrand* and *Richardson–Merrell* in determining the finality of the order under question here.

An examination of each of the *Cohen* exceptions leads this Court to conclude, as has a majority of the circuits that have addressed the issue,[5] that orders denying motions for the appointment of counsel in civil cases are not subject to interlocutory appeals.

Under the first tier of the *Cohen* exceptions, the order from which an appeal is sought must conclusively determine the disputed question. This first tier, "stated in *Coopers* as 'must conclusively determine the disputed question,' was restated in *Firestone* as 'the challenged order must constitute a complete, formal and, in the trial court, final rejection ... of a claimed right....' " *Miller v. Simmons,* 814 F.2d 962, 965–66 (4th Cir.1987), *cert. denied,* 484 U.S. 246, 108 S.Ct. 46, 98 L.Ed.2d 203 (1987).

This Court is unwilling at this stage of the civil action to view the order of the court below as one which conclusively determines the issue in question. As the Sixth Circuit Court of Appeals has written on this subject, we take guidance from its observations that:

> ... orders denying appointment of counsel should be presumed tentative because these motions are sometimes made before filing a complaint, ... and more frequently are made with the filing of a *pro se* complaint and with

---

**5.** See *Holt v. Ford,* 862 F.2d 850, 851 (11th Cir.1989), for a listing of the circuits, wherein 28 U.S.C. § 1291's provision that the Courts of Appeals shall have jurisdiction over "all final decisions of district courts" was being analyzed as is our 42 Pa.C.S. § 742 finality statute.

little or no showing of plaintiff's efforts to obtain counsel.[6]  Also, there is very little in the record upon which the district judge can, for this purpose, determine whether the claim has merit.  We believe a practical approach to this issue of appealability, as the Supreme Court directs in *Cohen*, leads to the conclusion that an order denying appointment of counsel does not conclusively determine the disputed question prior to the district court's final disposition of the case unless the district court's order was expressly made final.  337 U.S. at 546, 69 S.Ct. at 1225.  Accordingly, we determine that orders denying appointment of counsel in these cases cannot, on this appeal, be said to have conclusively determined the disputed question.

*Henry v. City of Detroit Manpower Dept.*, 763 F.2d 757, 762 (6th Cir.1985).  Accord *Miller v. Simmons*, supra, 814 F.2d at 965 (Order denying appointment of counsel in civil case was interlocutory since it is denied without prejudice, and, thus, could be reconsidered, at a later time, in the exercise of the district court's discretion if the facts warranted it).

At bar, there is no indication from the face of the order appealed that it was entered with prejudice against the appellant's *pro se* motion.  Therefore, it is consistent with the teaching of *Cohen* to conclude that an order denying the appointment of counsel does not conclusively determine the disputed question prior to the court below's final disposition of the case unless its order was expressly made final. 337 U.S. at 546, 69 S.Ct. at 1225; see also *Henry*, supra, 763 F.2d at 762.

The second of the *Cohen* criteria is unavailing to the appellant in that the denial-order is not independent of the issues to be tried.  As stated by the United States Supreme Court in evaluating the non-collateral nature of an order disqualifying counsel in civil cases, "Only after assessing

6.  We have no indication of record that the appellant made any attempt to obtain counsel, as he had done in 1986 in a previous partial custody/visitation case involving the same minor child.  See note 4, supra.

the effect of the final judgment could an appellate court decide whether the client's right had been prejudiced." *Richardson–Merrell,* supra, 472 U.S. at 439, 105 S.Ct. at 2765. This is no less germane here.

We believe that, in light of the profusion of motions and orders prepared and submitted to the court below by the appellant,[7] it is justifiable to believe that this *pro se* litigant, who had the ability to perfect an immediate appeal upon the denial of the appointment of counsel by the Court of Common Pleas, would be equally adept at raising the denial of the appointment of counsel should he be unsuccessful on the merits and take a final appeal in the matter. See *Miller,* supra, 814 F.2d at 967. More to the point, the appellant has not demonstrated that circumstances exist which would preclude him from presenting his claim to this Court along with his appeal from the Court of Common Pleas should the ultimate issue of his civil action not be resolved in his favor. *Id.; Appleby v. Meachum,* 696 F.2d 145, 146 (1st Cir.1983).

For the reasons just stated, we also hold that the third tier of the *Cohen* test, *i.e.,* whether the denial of immediate review would render impossible any review whatsoever, has not been satisfied. *Firestone,* supra, 449 U.S. at 376, 101 S.Ct. at 674.

Although not argued by the appellant, we would add that any contention that the failure to appoint counsel would be the "death knell" of the case would not alter our decision. In responding to a similar argument, raised in the context of the district court's denial of class certification and the plaintiff's immediate appeal of such an interlocutory order, the United States Supreme Court stated in *Cooper & Lybrand:*

> In addressing the question whether the "death knell" doctrine supports mandatory appellate jurisdiction of orders refusing to certify class actions, the parties have devoted a portion of their argument to the desirability of

---

**7.** The form and content are as good as any this Court has seen prepared by counsel.

the small-claim class action.  Petitioner's opposition to the doctrine is based in part on criticism of the class action as a vexatious kind of litigation.  Respondents, on the other hand, argue that the class action serves a vital public interest and, therefore, special rules of appellate review are necessary to ensure that district judges are subject to adequate supervision and control.  Such policy arguments, though proper for legislative consideration, are irrelevant to the issue we must decide.

There are special rules relating to class actions and, to that extent, they are a special kind of litigation.  Those rules do not, however, contain any unique provisions governing appeals.  The appealability of any order entered in a class action is determined by the same standards that govern appealability in other types of litigation.  Thus, if the "death knell" doctrine has merit, it would apply equally to the many interlocutory orders in ordinary litigation—rulings on discovery, on venue, on summary judgments—that may have such tactical economic significance that a defeat is tantamount to a "death knell" for the entire case.

Though a refusal to certify a class is inherently interlocutory, it may induce a plaintiff to abandon his individual claim.  On the other hand, the litigation will often survive an adverse class determination.  What effect the economic disincentives created by an interlocutory order may have on the fate of any litigation will depend on a variety of factors.

*    *    *    *    *    *

Accordingly, we hold that the fact that an interlocutory order may induce a party to abandon his claim before final judgment is not a sufficient reason for considering it a "final decision" within the meaning of § 1291.

437 U.S. at 470, 98 S.Ct. at 2458 (Footnotes omitted).

Our review of the documents included in the record, in addition to the brief submitted by the appellant, all of which we find (as to content and form) to have been exemplary for a *pro se* litigant, indicate no complex issue sufficient to

require the designation of counsel. See *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir.1986). Nor are we confronted with a scenario in which an indigent is being faced with the *termination* of his parental rights.[8] If such were the case, our approach to the matter, as well as to its resolution, might be different. See, *e.g.*, *State v. Jamison*, 251 Or. 114, 444 P.2d 15, 17 (1968) (Indigent parent at termination proceeding must be supplied with counsel at public expense); *In re Rodriquez*, 34 Cal.App.3d 510, 110 Cal.Rptr. 56 (1973) (Statute and Due Process required appointment of counsel to indigent parent where termination of parental rights involved); *Danforth v. State Dept. of Health & Welfare*, 303 A.2d 794 (Me.1973) (Statute gives right to indigent parents to counsel in termination cases); *In re Adoption of R.I.*, 455 Pa. 29, 312 A.2d 601 (1973) (Indigent parent was entitled to the appointment of counsel in an involuntary termination of parental rights case, or, at the very least, to be told of one's right to free counsel).

We do not find that the denial of the appellant's request for the appointment of counsel to aid him in his effort to secure partial custody/visitation rights has such cryptic connotations, as in termination, paternity, dependency or involuntary commitment hearings, to authorize the immediacy of his denial-order for appellate review. Compare *In Interest of Michael Y.*, 365 Pa.Super. 488, 530 A.2d 115 (1987) (A party at a dependency hearing has right to be apprised of right to counsel, and free counsel if indigent); *In Interest of S.N.W.*, 362 Pa.Super. 295, 524 A.2d 514 (1987) (Juvenile Act provides for the appointment of counsel for indigent parent in a dependency hearing); *In re Hutchinson*, 500 Pa. 152, 454 A.2d 1008 (1982) (Right to *effective* counsel in involuntary commitment proceedings under § 304 of the Mental Health Procedures Act); *Corra v. Coll*, 305 Pa.Super. 179, 451 A.2d 480 (1982) (Indigent defendants in

---

**8.** Custody (*i.e.*, visitation) is an ongoing process which may be modified "at any time the best interest of the child requires such." *Karis v. Karis*, 518 Pa. 601, 607–08, 544 A.2d 1328, 1331 (1988); *Lewis v. Lewis* 271 Pa.Super. 519, 522, 414 A.2d 375, 378 (1979).

civil paternity actions have a constitutional right to appointed counsel).

Accordingly, for the reasons herein stated, we hold that the order appealed is interlocutory in nature, and, because it does not satisfy any of the *Cohen* exceptions to the finality rule, we quash.[9]

Order quashed. Jurisdiction relinquished.

WIEAND, J., concurs in the result.

---

**9.** Although in *May v. Sharon,* 377 Pa.Super. 261, 546 A.2d 1256 (1988), a panel of this Court reviewed the denial of counsel sought by the appellant to aid him in his effort to sue criminal defense counsel, it did so without addressing the interlocutory nature of such an order. As such, we do not consider *May* to be controlling in the case at bar. We restrict it to the facts of that case.

It should be noted that the issue of jurisdiction can be raised sua sponte. See *May v. Turner Corp.,* 285 Pa.Super. 241, 427 A.2d 203 (1981). And, as such, we have done so in the case at bar to address the preliminary question of jurisdiction, which is our right and obligation as an appellate court.