604 A.2d 712

**IN re L.M.P., a Minor.**

**Appeal of Regina ANGELL-ERICSON, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 23, 1991.

Filed March 5, 1992.

E. Graham Robb, Philadelphia, for appellant.

Donna M. Miller, Allentown, for Gnaden, participating party.

Michael R. Muth, Asst. Public Defender, Stroudsburg, for Carbon, participating party.

Paul A. Barrett, Scranton, for Pocono, participating party.

Before DEL SOLE, BECK and HUDOCK, JJ.

DEL SOLE, Judge:

This is an appeal from a final order denying Appellant's petition which sought to declare null and void the involuntary commitment of her son, to expunge all court and hospital records related to the commitment and to declare that she had no financial responsibility as a result of the treatment her son received. Although Appellant challenges this order on numerous grounds, upon review we find each such issue to be without merit and we affirm the trial court's decision.

Appellant's son, a 13 year old boy, was the subject of the involuntary commitment following his ingestion of an unknown quantity of aspirin in an apparent suicide attempt on January 13, 1990. Following an examination by an emergency room physician and a psychiatrist, the minor was involuntarily committed to the mental health facility at Gnaden Huetten Memorial Hospital for a period not to exceed seventy-two hours as provided in 50 P.S. § 7302. An application for extended involuntary emergency treatment was filed pursuant to 50 P.S. § 7303, and a hearing on the application was held before a Mental Health Review

Officer on January 17, 1990. The officer ordered the involuntary emergency treatment of the minor to be extended for a period not to exceed ten days. A court review, which would have required a hearing within 72 hours, was not sought by Appellant or anyone else on behalf of the minor, however subsequent to his discharge Appellant filed her Petition, the denial of which is the subject of this appeal.

Appellant's initial issues address the conclusion that the involuntary commitment of her son was warranted in view of all the evidence presented. She alleges that no clear and convincing evidence was shown which would support the commitment, that the doctor's and officials who recommended commitment based their decisions on her behavior rather than her son's mental condition, and that her decision to seek outpatient therapy rather than a voluntary commitment of her son was wrongly discounted.

Provisions for the involuntary emergency examination and treatment of an individual are covered under 50 P.S. § 7302. Subsection (b) directs a physician to examine the individual "to determine if the person is severely mentally disabled ... and in need of immediate treatment." A definition for the phrase "severely mentally disabled" can be found in 50 P.S. § 7301. It provides:

(a) ... A person is severely mentally disabled when, as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself.

. . . . .

(b) **Determination of Clear and Present Danger.**

. . . . .

(2) Clear and present danger to himself shall be shown by establishing that within the past 30 days:

. . . . .

(ii) the person has attempted suicide and that there is the reasonable probability of suicide unless adequate

treatment is afforded under this act. For the purpose of this subsection, a clear and present danger may be demonstrated by the proof that the person has made threats to commit suicide and has committed acts which are in furtherance of the threat to commit suicide ...

The application which was completed regarding the minor's Section 302 commitment stated that the child: "Took overdose of ASA. Fought with brother when he tried to stop him. No stable environment for him to return to." The record clearly supports the finding that Appellant took certain action in furtherance of the threat to commit suicide. Nevertheless Appellant points to the comment that Appellant did not have a "stable environment to return to" and the examining physicians responses to her conduct in the emergency room as evidence that the commitment was sought in response to her behavior rather than her son's condition. We cannot agree with her assessment of the record in this regard.

After Appellant's son was transported to the emergency room by the police he was examined by Dr. Liegner, an emergency room physician, and by Dr. Morrow, a psychiatrist. Dr. Liegner testified at his deposition that he was the physician who initially met with Appellant and advised her that it was his position that psychiatric attention for her son was warranted. Following this conversation Dr. Morrow was brought in to examine her son. As a result of his evaluation Dr. Morrow concluded, as he related in his deposition, that the child did not need to be hospitalized for a long time and in terms of the "therapeutic nature of the care he would get" it would be best if he were voluntarily admitted. After lengthy discussions with Appellant concerning immediate follow up care Dr. Morrow reasoned that it "would be possibly safe to send [the minor] home ... if he could be provided with a safe and stable environment until he was able to get what was initially promised to be immediate psychological attention the following day."

Dr. Liegner was advised of Dr. Morrow's position but stated that he remained "uncomfortable" sending the child

home because he remained of the belief that the child required a psychiatric evaluation at an in-patient setting. He advised Appellant of his assessment because "I wanted her to be aware and to have that on the record that we recommended that he come in and the best way to do that for us is to have the patients or whoever is their guardian ... sign a release form." Appellant refused to sign the form and became, according to Dr. Liegner's description, "more and more agitated." At that point Dr. Liegner decided to no longer allow Dr. Morrow's judgment "to be above mine since he's more specialized in psychiatry" and he began to initiate an emergency commitment under Section 302 based upon his continued position that the minor needed in-patient care. Dr. Morrow recounted in his deposition that he was advised of Dr. Liegner's position and Appellant's actions with regard to the release form. He stated: "it had raised serious questions in my mind as to whether that [sending the minor home] was a viable decision now on my part because I based my decision on allowing him to go home with the understanding that he was going to be secure in a safe and stable environment." Dr. Morrow testified that he was no longer comfortable with sending the child home because he felt "under the circumstances the child pose[d] a danger to himself." He concluded that he would have to sign a 302 commitment form if a voluntary commitment was not forthcoming. After Appellant, according to Dr. Morrow, "surreptitiously" attempted to escort her son out of the emergency room Dr. Morrow made a decision to complete the emergency commitment form.

Appellant claims that the facts as stated by the examining physicians demonstrate that the commitment was ultimately sought based upon her behavior. Appellant, however, seems to ignore or significantly discount the fact that both physicians opined that her 13 year old son had taken action which resulted in a significant step in a suicide attempt. His action alone clearly satisfied the conditions of Section 302 which describe an individual who is a clear and

present danger to himself. Both doctors were also of the opinion that a stable home environment with immediate follow-up therapy was necessary if a release of the child was to be an available option for his care. When it became apparent to both physicians that that "stable environment" did not exist, they dismissed that option and concluded that emergency treatment was warranted to best provide for the child's needs. While Appellant would suggest that it was the physicians' duty to examine alternative care for her son, such as contacting Children and Youth Service to locate someone to provide adequate care, it is clear that these doctors were of the opinion that a stable "home environment" was the only outpatient setting that could be considered to provide the help the minor child needed at this time. Such a "stable" setting could hardly be said to be forthcoming with a rearranging of his caregiver and home life.

Appellant vaguely makes these same claims with regard to the ten day commitment which was sought and obtained under 50 P.S. § 7303. She again claims that emphasis on the child's home environment was improperly relied upon and that her suggested plan, which would permit the child to remain at home and receive out-patient treatment, was wrongly rejected in favor of inpatient treatment. The certification under Section 303, however, indicates that the minor was diagnosed as having a Depressive Reaction which, following the breakup with his girlfriend, resulted in an attempted suicide by overdose. The certification reads in part: "Dr. Taylor stated with a reasonable medical certainty that within a period of 30 days without proper supervision and care the patient would be a source of harm to himself because he is suicidal." It was appropriate to consider the minor's home environment in determining whether proper care and supervision could be obtained outside of an inpatient setting. Further, this treating physician opined that Appellant's son would benefit from one-on-one counseling with a psychologist and group therapy which he would undergo during his 10 day stay. In view of

the record, we find support for the conclusion that Appellant's minor was in need of continued involuntary treatment for a period of ten days.

Appellant also makes numerous procedural and constitutional challenges to her son's commitment. She claims that the Mental Health Procedures Act must be construed to meet minimally adequate due process requirements. In that regard she maintains that she was not provided with timely notice of the Section 303 proceeding or information to prepare an adequate defense. She also alleges that the Section 303 order, itself, was defective in that it failed to provide an adequate description of the treatment to be provided and its appropriateness.

Although we note Appellant does not allege that the Act itself is unconstitutional, she asks this court to read into the Act certain constitutional protections which she believes are minimal requirements to meet a due process challenge. Although Appellant seeks to have us rule that she should have been given more notice of the Section 303 proceeding, the Act itself requires that the "informal hearing" be held "within 24 hours after the application is filed." 50 P.S. § 7303(b). Thus, under the provisions of the Act, formal notice of the filing of an application under Section 303 could not be given more than 24 hours prior to the hearing. Further, in this case there was evidence offered, which the court accepted, indicating that both Appellant and her son were provided with informal notice more than 24 hours before the hearing.

Appellant also suggests that more than simply a notice of time, date and place must be given to meet due process standards. In support of her position Appellant cites *Commonwealth ex. rel. Finken v. Roop*, 234 Pa.Super. 155, 339 A.2d 764 (1975). There the court was considering a provision of the Pennsylvania Mental Health and Mental Retardation Act of 1966. In examining this provision which provided for the civil court commitment of an individual, the court commented that the notice requirement found in the Act had to be construed to require that the subject of the

commitment proceeding be given a copy of the petition in advance of the hearing, the names of adverse witnesses and the substance of their testimony.

The commitment procedure at issue in *Finken* is not the same procedure at issue in this case. *Finken* concerned a court commitment under § 406 of the Mental Health and Mental Retardation Act of 1966 which has been repealed by the Mental Health Procedures Act, except as it related to mentally retarded individuals. 50 P.S. § 4406. Further, Section 406 was not the predecessor to the section of concern here, Section 303. Section 406 dealt with non-emergency commitments unlike section 303 which is entitled "Extended involuntary emergency treatment." Court-ordered involuntary treatment is now covered in 50 P.S. § 7304. Section 304, requires a formal hearing to be held in accordance with due process standards. The court in *In re Hutchinson*, 500 Pa. 152, 454 A.2d 1008 (1982) noted the different requirements of Sections 303 and 304 and remarked: "The legislature has determined that commitments for less than twenty days do not require the same formalities as are necessary in commitments for longer periods of time." *Id.*, 500 Pa. at 159, 454 A.2d at 1012 n. 8. "The structure of the Act evidences a legislative intent to create a treatment scheme under which the patient's procedural protections expand progressively as the deprivation of his liberty gradually increases." *In Re Ann S.*, 279 Pa.Super. 618, 421 A.2d 370, 372 (1980). Clearly the same concerns at issue in *Finken* are not at issue in an emergency matter.

In this case Appellant and her son were clearly given notice of the proceeding. There is support in the record for the court's finding that Appellant received informal notice more than 24 hours prior to the hearing. She was also provided with a copy of the Application which described the result of the examination of her son and the suggested treatment. Because the minor was already undergoing treatment at the facility, Appellant and her son knew of those who were involved in his case. The court further noted that Appellant and her son were represented by an

experienced member of the bar at the proceeding, yet failed to raise any procedural irregularities at that time. Accordingly we agree with the trial court that Appellant's claims regarding notice must fail.

We also find no merit to Appellant's argument that the Section 303 order was defective in that it failed to provide an adequate description of the treatment or the appropriateness of such treatment. In regard to this claim Appellant alleges that the certificate "merely references Dr. Taylor's testimony." As noted previously, the Certification references that incident which led to the minor's initial contact with the hospital. It stated the substance of Dr. Taylor's diagnosis and his opinion as to why in-patient treatment was necessary to protect the child. In the case of *In re Condry*, 304 Pa.Super. 131, 450 A.2d 136 (1982), the certification of the Mental Health Review Officer contained a summary of the evidence presented at the hearing before the review officer. Upon review the court found that the evidence presented to the officer and summarized in the certification was sufficient to justify a finding that the appellant was a clear and present danger to himself. Although the certification in *Condry* was ultimately vacated because it failed to include any statement of treatment, such is not the case here where the certification referenced Dr. Taylor's "plan for treatment consisting of psychotherapy to help the patient learn to cope with his problems." In this case Dr. Taylor set forth in his testimony before the Officer the basis for his opinion as to why extended involuntary treatment was necessary and the plan of treatment which was proposed. The Act which requires the certification to include findings of why treatment is necessary and a description of the treatment to be provided together with an explanation of the adequacy and appropriateness of such treatment does not prohibit a recounting of the testimony presented at the hearing. 50 P.S. § 7303(d). Although the description of treatment in this case includes reference to the details of the plan in the testimony of Dr. Taylor, we find the requirements of 50 P.S. § 7303(d) have been met.

The remaining due process claim urged by Appellant concerns a violation of her son's rights by consideration of what she claims were irrelevant factors, such as his mother's behavior, to the issue of his mental disability. In as much as this specific issue has not been raised in this context by Appellant previously we find it has been waived and we decline to address its merits. *In Re S.C.*, 280 Pa.Super. 539, 421 A.2d 853 (1980). We do, however, refer Appellant on this issue to our previous discussion regarding the appropriateness of concern over her son's home environment as it related to his treatment.

Appellant also asks this court to consider whether her right to determine the appropriate treatment for her son was unconstitutionally infringed upon by the decision to have him undergo involuntary in-patient treatment. The trial court in reviewing this claim noted that the state's interest in this case in ensuring and health, safety and welfare of Appellant's minor, arose from the clear threat he posed to his own life. We affirm the trial court for the reasons provided in its opinion on this issue which detail that Appellant's rights over her son were not absolute and were justifiably infringed upon to protect her son.

Finally we decline to discuss Appellant remaining issue which asks this court to determine whether she is financially responsible for the costs related to the involuntary commitment of her son. The trial court refused Appellant's request to declare that she had no financial liability in this matter. We find such an order appropriate in view of our decision affirming the court's refusal to void the minor's commitment, but an ultimate conclusion as to where liability rests is not appropriate for discussion in this appeal.

Order affirmed.