J-A08032-18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| IN RE: OLIVIA BINGAMAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: OLIVIA BINGAMAN | : | No. 3099 EDA 2017 |

Appeal from the Order Dated July 31, 2017
in the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2017-22686, 2017-79805

BEFORE:     PANELLA, LAZARUS, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:     **FILED JUNE 05, 2018**

Olivia Bingaman appeals from the July 31, 2017 order, which denied her petition for review challenging her involuntary commitment to a mental health facility under section 7303 of the Mental Health Procedures Act (MHPA), 50 P.S. §§ 7101-7503.  After review, we affirm.

We begin with the factual and procedural history.  On June 22, 2017, Bingaman called her primary care physician because she was depressed, and gave that information to a nurse at the doctor's office.  During the course of the conversation, the nurse became concerned for Bingaman's safety.  The nurse called the police and kept Bingaman on the phone until police arrived.

> [Officer Myers] responded to a 911 call and found Bingaman sitting in the driveway hysterically crying.  She handed Officer Myers a note in which Bingaman wrote that she guessed this would be her "final entry" and that it would be better for everyone if "I just leave…for good."  Officer Myers interpreted this as a suicide note.
>
>     Bingaman then told Officer Myers that [] she wanted to kill herself and related her history of depression and anxiety.  She

*Retired Senior Judge assigned to the Superior Court.

said she was not taking her medication because "it ran out." She also informed Officer Myers that she had guns inside the house where she was residing at the time. Officer Myers testified that he believed Bingaman was living in that house and had access to the place where guns were located.

Based on these circumstances, Officer Myers believed that Bingaman was a danger to herself. He informed her that he was going to take her to speak with a mental health doctor. Bingaman said "okay" and went along without any problems. Bingaman was then taken to a mental health facility identified as "MCES Building 50" at Norristown State Hospital. After arrival at the mental health building, Officer Myers informed the staff what had transpired, and Bingaman was taken away with staff. Officer Myers then prepared the certification for a section 302 petition.[1] He included the note Bingaman had written on June 22, 2017[,] as a part of this petition[.]

Trial Court Opinion, 11/8/2017, at 2 (unnecessary capitalization omitted).

Dr. Marina Cooney, a psychiatrist, "performed the initial evaluation of

Bingaman [at the hospital] and concluded that she suffered from major

recurring depression." *Id.* at 2-3.

It was her opinion that Bingaman had "greatly impaired insight and judgment" and "would not be able to maintain herself safely outside the hospital" at that time. Bingaman told Dr. Cooney that she had been on several antidepressants over the years and stated that she had become increasingly depressed since her

---

[1]     Section 302 of the MHPA provides for the involuntary examination and treatment of a person not to exceed 120 hours if, upon certification of a physician for examination, or upon a warrant issued by a county administrator authorizing an examination, an examination conducted by a physician within two hours of arrival shows that the person is severely mentally disabled and in need of emergency treatment.

*In re J.M.Y.*, 179 A.3d 1140, 1144 (Pa. Super. 2018) (*en banc*) (citing 50 P.S. § 7302).

> grandfather died in April. She also acknowledged a prior suicide attempt, which led to her being hospitalized at Philhaven Hospital.
>
> … Bingaman said she was having thoughts of killing herself, and that she owned a firearm. The day before the incident Bingaman reported she had been staring at the bag that contained her 40 caliber pistol. Dr. Cooney testified that Bingaman specifically said she had a plan to shoot herself. Based on the information she received, and her observations, Dr. Cooney believed Bingaman presented a risk to herself if she were to be released back to the same conditions without treatment. Based upon Bingaman's emotional instability and impulsivity, Dr. Cooney was concerned that Bingaman would act out in a way that was harmful to herself. Therefore, she recommended inpatient psychiatric treatment for up to one hundred and twenty hours (five days). Bingaman refused voluntary inpatient treatment, according to Dr. Cooney.

*Id.* at 3 (unnecessary capitalization and footnote omitted). As a result, Bingaman was committed to involuntary inpatient treatment under section 302 of the MHPA for five days.[2] At the conclusion of this treatment, Dr. Cooney recommended that Bingaman receive extended treatment under section 303,[3] and completed a section 303 application for extended treatment to that effect.

---

[2] Bingaman is not challenging her section 302 commitment on appeal.

[3] Section 303 of the MHPA provides for extended involuntary emergency treatment of any person who is being treated pursuant to section 302 for a period not to exceed twenty days if, after an informal conference where the patient is represented by counsel, a judge or mental health review officer finds that the patient is severely mentally disabled and in need of continued involuntary treatment, and so certifies.

*J.M.Y.*, 179 A.3d at 1144 (citing 50 P.S. § 7303(a)-(c)).

On June 27, 2017, Bingaman appeared for a hearing before a mental health review officer (MHRO) on the application for extended treatment under section 303. Bingaman, represented by the public defender's office, waived her right to a hearing on the application for extended treatment, and stipulated to 20 days of involuntary outpatient treatment recommended by Dr. Cooney. A certification for treatment pursuant to section 303 was filed that same day.

After Bingaman completed her section 303 treatment, she filed a petition for review pursuant to 50 P.S. § 7109(b)[4] challenging her section 303 commitment.[5] On July 31, 2017, the trial court held a hearing on the petition for review and a *de novo* hearing on the section 303 commitment. At the conclusion of the hearing, the trial court denied Bingaman's petition for

---

[4] This subsection provides as follows.

> In all cases in which the hearing is conducted by a mental health review officer, a person made subject to treatment shall have the right to petition the court of common pleas for review of the certification. A hearing shall be held within 72 hours after the petition is filed unless a continuance is requested by the person's counsel. The hearing shall include a review of the certification and such evidence as the court may receive or require. If the court determines that further involuntary treatment is necessary and that the procedures prescribed by this act have been followed, it shall deny the petition. Otherwise, the person shall be discharged.

50 P.S. § 7109(b).

[5] Bingaman retained Kaitlyn S. Clarkson, Esquire as counsel for this petition for review and the instant appeal.

review, and affirmed the determination of the MHRO regarding the agreed-upon involuntary outpatient treatment recommended by Dr. Cooney. N.T., 7/31/2017, at 55. This timely-filed appeal followed.[6]

On appeal, Bingaman challenges her involuntary outpatient treatment under section 303. She asks that we vacate her section 303 commitment, and order expungement of the records of her section 303 commitment. "Our well-settled standard of review in cases involving a motion for expunction [of mental health records] is whether the trial court abused its discretion." *J.M.Y.*, 179 A.3d at 1143 (citation and quotation marks omitted). "[W]hen an appellant's due process rights under the MHPA are violated, we may vacate the certification for involuntary treatment pursuant to section [ ]303, and direct that all records pertaining to this matter be expunged." *Id.* at 1144 (quotation marks and citation omitted). For the reasons that follow, we hold that the trial court did not abuse its discretion, and Bingaman's due process rights were not violated.

Bingaman first argues that her due process rights were violated because the section 303 certification did not contain an adequate description of the

---

[6] The trial court did not order Bingaman to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), but the trial court did file a Pa.R.A.P. 1925(a) opinion.

treatment to be provided in violation of 50 P.S. § 7303(d)(2).[7]  Bingaman's

Brief at 24.

That subsection provides in relevant part:

**(d) Contents of Certification.**--A certification for extended involuntary treatment shall be made in writing upon a form adopted by the department and shall include:

\*\*\*

   (2) a description of the treatment to be provided together with an explanation of the adequacy and appropriateness of such treatment, based upon the information received at the hearing[.]

50 P.S. § 7303(d)(2).  An application for extended treatment under section

303 is a four-page form document, which is divided into four parts and

contains several fill-in-the-blank boxes.  Relevant to Bingaman's claim, Parts

I-III comprise the application for treatment under section 303, and Part IV is

the certification for treatment under section 303.  Here, the application was

completed on June 26, 2017, and the certification was completed on June 27,

2017.

According to Bingaman,

The certification only ordered outpatient treatment.  It did not list the type of treatment to be provided – psychotropic or other drug therapy, group therapy, individual therapy, case management support, or individual treatment such as peer support.  Simply checking the box for outpatient does not adhere to the requirements of the MHPA.

---

[7] We have reordered her claims for purposes of our disposition.

Bingaman's Reply Brief at 2.

In support of her argument, Bingaman cites Reproduced Record 15, which is the third page of the section 303 application that was submitted at Bingaman's June 27, 2017 hearing before the MHRO. The third page contains a portion of Part III (the last section of the application) and a portion of Part IV (the certification). Bingaman's Brief at 23; Bingaman's Reply Brief at 2. In this copy of the form, Part III is blank, but Part IV is completed. In the "details of findings" box in Part IV, it states: "Stipulation to petition as sufficient to enter a court order. A hearing was held wherein the doctor testified about the need for treatment[.]" Reproduced Record 15, 44. This certification was completed by the MHRO at the June 27, 2017 hearing. As noted in the certification and in her brief, Bingaman stipulated to the section 303 treatment recommended by Dr. Cooney at that time. *See* Appellant's Brief at 8.

Bingaman challenged the adequacy of this certification at the July 31, 2017 hearing before the trial court. In response, the Commonwealth submitted as an exhibit at the hearing the first three pages of the form, which comprised the completed section 303 application. N.T., 7/31/2017, at 40-41. On the third page of the application, the "treatment needed" section of Part III includes a hand-written description of the treatment to be provided. Application for Extended Involuntary Treatment, 6/27/2017, at 3. *See also* Trial Court Opinion, 11/8/2017, at 4 (quoting the "treatment needed" section of Part III: "inpatient psychiatric treatment individual, group, supportive

therapy, milieu therapy, p/r psychotropic as needed, restraints as needed for her safety").

The June 27, 2017 certification (Part IV of the form) refers back to the application (Parts I-III of the form), wherein a description of the treatment to be provided is detailed in Part III. *See* Trial Court Opinion, 11/8/2017, at 5 ("The type of treatment provided was set forth in the initial application in detail[.]"). We have held that this type of reference-back is permissible in a section 303 application/certification. *See In re L.M.P.*, 604 A.2d 712, 716 (Pa. Super. 1992) (holding that the requirements of the MHPA are met where the description of the treatment in the certification references the details of the treatment to be provided set forth in the doctor's testimony). Thus, contrary to Bingaman's assertion that the certification merely had a checked box for outpatient treatment, the description of treatment in the certification in Part IV actually referenced the application, which detailed the type of outpatient treatment to be provided in Part III. This satisfied the MHPA's requirement that the certification contain a description of the treatment to be provided. Accordingly, Bingaman's due process rights were not violated, and she is not entitled to relief on this basis.

In Bingaman's next claim, she argues that "[w]ithout an overt act in furtherance of her suicidal ideations, [her section ]303 commitment cannot stand and all records must be expunged." Bingaman's Brief at 18. "For involuntary commitment, it is not sufficient to find only that the person is in

need of mental health services. It must also be established that there is a reasonable probability of death, serious injury or serious physical debilitation to order commitment." *In re R.F.*, 914 A.2d 907, 913–14 (Pa. Super. 2006) (citation omitted).

Here, following the July 31, 2017 hearing, the trial court found sufficient evidence warranting a need for involuntary treatment.

> At the hearing on [the petition for review, Bingaman's counsel] argued that there was insufficient evidence for Officer Myers to conclude that Bingaman's acts of writing what he reasonably concluded was a suicide note, as well as saying that she wanted to kill herself, as well as her telling him that she had access to guns at her residence, where she was residing and where [she was] located at the time he arrived, was insufficient []. This court disagrees. Bingaman told both Officer Myers and Dr. Cooney that she had a history of depression, and was not taking her medication. Bingaman told Dr. Cooney she had attempted suicide previously. The known presence of guns available to Bingaman provided ample evidence of the danger of not proceeding with an involuntary commitment. Dr. Cooney testified that Bingaman would not agree to a voluntary [in]patient treatment.
>
> Th[e trial] court found the two witnesses who testified to be credible and to have justifiably believed Bingaman's words, both spoken and written, her emotional state, her prior mental history, which was made known to them, her refusal to agree to treatment, along with the clear availability to obtain a gun, met the standards under the law for the actions taken.

Trial Court Opinion, 11/8/2017, at 4-5. Based on the foregoing, we agree with the trial court that there was a reasonable probability that Bingaman would seriously injure herself. *See R.F.*, 914 A.2d at 914 (holding that

evidence was sufficient to prove a reasonable probability of serious injury where R.F. researched ways to commit suicide and called a suicide hotline).

In her third claim, Bingaman argues that she should have been offered voluntary outpatient treatment before the section 303 application was filed, because voluntary outpatient treatment was the "least restrictive means adequate to treat" Bingaman. Bingaman's Brief at 20-21. Whether or not the outpatient treatment under section 303 was termed voluntary or involuntary, Bingaman specifically agreed to that period of outpatient treatment at the June 27, 2017 hearing, and finished this treatment before her July 31, 2017 *de novo* hearing. In that regard, the MHRO ordered the least restrictive means adequate to treat Bingaman, given that she agreed to that treatment.

Moreover, Bingaman has failed to convince us that voluntary outpatient treatment was required to be offered. In support of her argument, Bingaman cites our Supreme Court for the proposition that "[t]o the extent feasible, necessary psychiatric treatment on a voluntary basis is encouraged." Bingaman's Brief at 19, *quoting* **In re J.S.**, 586 A.2d 909, 914 (Pa. 1991). Bingaman's reliance on this proposition for relief is misplaced. Our Supreme Court did not hold that the MHPA guarantees voluntary treatment. Rather, it held that such treatment was to be encouraged, but only to the extent feasible in a given situation. At the July 31, 2017 *de novo* hearing, Dr. Cooney testified that she was unsure whether voluntary outpatient treatment was offered prior to the June 27, 2017 hearing before the MHRO. Regardless, she testified that

Bingaman refused voluntary inpatient treatment at all times, stipulated to involuntary outpatient treatment at the June 27, 2017 hearing, and needed to be monitored to ensure she was benefiting from her new medication. N.T., 7/31/2017, at 33-34, 38. Thus, after a review of the record in this case, we are unpersuaded that the trial court abused its discretion in finding that involuntary outpatient treatment was the least restrictive means necessary.

Finally, Bingaman claims that the trial court abused its discretion in denying her motion for a continuance at the July 31, 2017 hearing. Bingaman's Brief at 24. Specifically, Bingaman's counsel requested a continuance in order to obtain her medical records and the transcript from the June 27, 2017 hearing. Bingaman's Brief at 25.

"The matter of granting or denying a continuance is within the discretion of the trial court." **Commonwealth v. Sandusky**, 77 A.3d 663, 671 (Pa. Super. 2013) (citation omitted). Bingaman has not set forth any argument as to how she would have utilized the medical records or how she was prejudiced by not having them. Bingaman's Brief at 24-27. Furthermore, the medical records were available to counsel at the July 31, 2017 hearing for the cross-examination of Dr. Cooney. As to the request for a continuance to obtain the June 27, 2017 hearing transcript in order to raise a claim of ineffective assistance of counsel, Bingaman stipulated to the recommended treatment and waived her right to a hearing on the application for extended treatment under section 303. Therefore, any transcript from that hearing, if

it even exists, would be of limited value.[8] Moreover, Bingaman received a *de novo* hearing on her section 303 commitment, rendering any testimony or ineffective assistance at that June 27, 2017 hearing moot. Simply put, Bingaman was not prejudiced by the denial of her request for a continuance, and she is not entitled to relief on this basis.

Accordingly, after a review of the record and Bingaman's arguments, we find no reason to disturb the trial court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 6/5/18

---

[8] There is no transcript from the June 27, 2017 hearing before the MHRO in the certified record.