J-A19003-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| M.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| MONTGOMERY COUNTY | : | |
| ADMINISTRATOR OF MENTAL | : | No. 446 EDA 2018 |
| HEALTH | | |

Appeal from the Order January 11, 2018
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2017-27293

BEFORE: PANELLA, P.J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.: **FILED DECEMBER 06, 2019**

Appellant, M.S., challenges the order entered in the Montgomery County Court of Common Pleas, denying his petition to vacate his involuntary commitments under the Mental Health Procedures Act ("MHPA"), 50 P.S. §§ 7101-7503, and expunge all related records. Appellant contests the sufficiency of the evidence supporting his involuntary commitments. We affirm.

Police officers responded to an emergency call from Appellant's neighbor, reporting shots fired in Appellant's home. As the first officer arrived, he saw Appellant holding a handgun as he closed the blinds. In response, another officer arranged a phone call to negotiate with Appellant. On the call, Appellant repeatedly said he was depressed and that he had been drinking. He also mentioned his divorce several times.

---

[*] Former Justice specially assigned to the Superior Court.

As the negotiations were ongoing, officers made contact with several of Appellant's neighbors, who reported Appellant's behavior had become increasingly erratic as of late. Officers surrounded the perimeter of Appellant's home, and were able to safely take him into custody three and a half hours later. Police took him to the hospital, where he was involuntarily committed under Section 302 of the MHPA. Appellant's doctor filed a petition under Section 303 of the MHPA, requesting additional inpatient treatment for Appellant. Appellant requested a hearing on that petition and was appointed counsel.

At the hearing, the review officer heard testimony from three of the responding police officers, who recounted details of the incident at Appellant's home several days earlier. Dr. Marina Cooney, who evaluated Appellant's mental health, also testified. She recommended additional inpatient treatment for up to twenty days, given her continued concerns about Appellant's mental health and behavior. Finally, Appellant testified; he agreed with the officers' testimony and the doctor's characterization of his behavior. At the close of the hearing, the review officer ordered an additional ten days of involuntary treatment.

One week later, the review officer held a hearing pursuant to Section 304(b) of the MHPA. Appellant had submitted to reexamination by a mental health professional two days previously. That doctor testified, stating he believed Appellant to be mentally disabled and in need of additional treatment. Appellant was represented by counsel at the hearing, and stipulated that the

petition was sufficient to enter a court order. The review officer recommended involuntary outpatient treatment for up to ninety days, which was affirmed in an order by the common pleas court.

Appellant thereafter retained an attorney and filed a petition styled "Appeal Under Seal" on November 20, 2017. That document simply requested the court enter an order vacating Appellant's commitment record. The court held a hearing on December 15, 2017. At the hearing, Appellant argued that the court's failure to hold a hearing on his petition within 72 hours of filing, pursuant to 50 P.S. § 7303(g), required vacating Appellant's record. The court affirmed the findings of the review officer and denied Appellant's petition. Appellant timely appealed, and complied with Pa.R.A.P. 1925(b). This appeal is now properly before us.

We start with Appellant's contention that the trial court's failure to hold a hearing on his petition pursuant to 50 P.S. § 7303(g) required vacating Appellant's record. While Appellant did raise this issue at the December 15 hearing, he failed to include it in his concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). Our Supreme Court has noted "any appellate issues not raised in a Rule 1925(b) statement will be deemed waived." *Commonwealth v. Hill*, 16 A.3d 484, 494 (Pa. 2011). Additionally, Appellant discusses this issue in tandem with his argument that his conduct was insufficient to justify the extension of his involuntary commitment. This failure to divide these distinct arguments into separate parts in his brief is contrary to the appellate procedure outlined in Pa.R.A.P. 2119(a).

- 3 -

Even if we found this argument to have been properly preserved for our review, it would nevertheless merit no relief. This Court previously declined to void an involuntary commitment and expunge all related records where the petitioner did not seek a hearing. ***See In re L.M.P.***, 604 A.2d 712, 713 (Pa. Super. 1992). As the trial court indicates in this case, Appellant's document styled "Appeal Under Seal" did not request a hearing or otherwise invoke 50 P.S. § 7303(g). Instead, Appellant asked the court simply to vacate his commitments on various grounds, including the ineffectiveness of his appointed counsel. Under the circumstances, it is not evident that Appellant's submission constitutes the "petition" outlined by 50 P.S. § 7303(g). Therefore, we decline to grant relief on this issue.

Moving to Appellant's preserved issue, he challenges whether his involuntary commitment under Sections 303 and 304 of the MHPA were supported by "sufficient conduct."

50 P.S. § 7303 and § 7304 extend the length of involuntary treatment for persons found to be severely mentally disabled and in need of mental health care. Under the MHPA, "an individual is severely mentally disabled if as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself." ***In re Vencil***, 152 A.3d 235, 237 (Pa. 2017) (internal quotations and citation omitted). A person poses a clear and present danger to himself where he:

- 4 -

has acted in such manner as to evidence that he would be unable, without care, supervision and the continued assistance of others, to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety, and that there is a reasonable probability that death, serious bodily injury or serious physical debilitation would ensue within 30 days unless adequate treatment were afforded under this [Act.]

50 P.S. § 7301(b)(2)(i).

Our Court has held that discretion lies with the fact finder to "determine whether the evidence supports a finding by clear and convincing evidence that appellant posed a clear and present danger of harm to others or himself." *In re Hancock*, 719 A.2d 1053, 1058 (Pa. Super. 1998) (citation omitted).

Here, police responded to calls from Appellant's neighbors, who reported hearing gunshots coming from Appellant's residence. *See* N.T. Hearing, 10/26/17, at 5. Neighbors told the officers that Appellant had been acting oddly lately; he began purging large belongings, like his car and boat, but his home reflected hoarding tendencies. *See id*., at 7. He had also been spotted roaming the neighborhood, disheveled and intoxicated. *See id*.

The first responding officer then attempted to make contact with Appellant, who was seen shuttering the blinds while wielding a handgun. *See id*., at 5. Officers arranged for a telephone call to the home, with one of the officers serving as a negotiator. *See id*., at 3.

Appellant stated he had heard "heavy gunfire," but that he believed it was the police who had fired guns. *Id*. Appellant alternated between telling that officer he was fine and confessing to depression mainly due to the

initiation of divorce proceedings with his wife. *See id*., at 8-9. He slurred during the conversation, and admitted to consuming wine. *See id*., at 9.

Most alarmingly, he told the officer on the phone that he had "state-of-the-art surveillance cameras" pointed at the other officers surrounding his home. *Id*. Officers were locked in a standoff around Appellant's residence for three and a half hours, during which Appellant came out of the door three or four times but refused to show his hands or otherwise comply with police directions. *See id*., at 8. Officers were finally able to take him into custody, at which time he disclosed that he had a gun during the incident, and that he believed the entire interaction had lasted five minutes. *See id*.

Dr. Cooney, who performed a mental status evaluation of Appellant, testified next. *See id*., at 10. She stated Appellant was "superficially cooperative" and suffered from many mental health issues, including "unspecified mood disorder, adjustment disorder, depressed mood and disturbance of conduct, possible paranoid personality disorder, possible paranoia disorder, and alcohol disorder." *Id*., at 10-11. While Appellant did acknowledge that he had fired the gun the neighbors reported hearing, he failed to give a satisfactory explanation as to why he had done so. *See id*., at 11.

Dr. Cooney testified that the incident was due to Appellant's unstable mental health, not to alcohol abuse, and recommended additional inpatient psychiatric treatment. *See id*., at 12. Appellant agreed with the characterization of the incident. *See id*., at 15. Ultimately, the hearing review

officer ordered an additional ten days of inpatient treatment under Section 303 of the MHPA.

The parties again appeared before the court one week later for a hearing pursuant to Section 304. Dr. Cooney had reexamined Appellant two days earlier, and adjudged him severely mentally disabled. The doctor recommended additional outpatient treatment for up to 90 days. Appellant stipulated that the petition was sufficient for entry of the order, and waived his right to a full hearing on the merits of the petition.

At both hearings, Appellant was found to be severely mentally disabled and in need of continued treatment, pursuant to 50 P.S. § 7303(c) and § 7304(a)(1). This finding was supported by evidence that Appellant posed a clear and present danger to himself: namely, he discharged a loaded weapon in his residence, which spurred his engagement in a three and a half hour armed standoff with police and ended with a doctor's diagnosis of his litany of mental health issues. Under such circumstances, we disagree with Appellant's assertion that the fact-finder erred in determining such conduct constituted clear and convincing evidence that Appellant was severely mentally disabled and in need of treatment. As such, we affirm the order denying Appellant's petition to vacate and expunge his commitments.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/6/19